IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LARRY COCHRAN,

                  Plaintiff,                         OPINION and ORDER

    v.

                                                  11-cv-134-wmc

JAMES GEIT, STEVE DUTTON,
STEVE ROBINSON, DERRICK ROGER
and CAROL HOLINKA,

                  Defendants.

In this *Bivens* lawsuit[1], plaintiff Larry Cochran, a prisoner at the Terre Haute Federal Correctional Institution, alleges that while he was confined at the Oxford Correctional Institution, prison officials were deliberately indifferent to the danger he faced climbing into the top bunk in his cell without a ladder, which led to a fall and severe injury.

Because plaintiff has struck out under 28 U.S.C. § 1915(g), he is also disqualified from proceeding *in forma pauperis* on claims other than those containing allegations that he is in imminent danger of serious physical harm. After considering plaintiff's allegations, I conclude that they meet the imminent danger standard. However, before the court may screen the complaint under 28 U.S.C. § 1915(e)(2)(B) to determine whether it states a claim upon which relief may be granted, plaintiff will have to make an initial partial payment of the filing fee.

In addition, plaintiff has filed a motion for appointment of counsel and a motion for service by the U.S. Marshal. I will deny both of these motions as premature.

---

[1] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)

ALLEGATIONS OF FACT

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). In his complaint, plaintiff alleges the following facts, which the court accepts for the purpose of this screening order:

Plaintiff Larry Cochran is currently confined at the Terre Haute Federal Correctional Institution. He is over 50 years old. Previously, plaintiff had been incarcerated at the Oxford Correctional Institution, located in Oxford, Wisconsin, within this judicial district. All of the defendants worked at the Oxford prison: James Geit was a corrections officer, Steve Dutton was a corrections counselor, Steve Robinson was a corrections unit manager, Derrick Roger was the safety manager and Carol Holinka was the warden.

Plaintiff's cell at the Oxford prison had bunk beds, but there was no ladder to the top bunk. Plaintiff was instructed that to get to the top bunk, he should place his cell chair between his bed and locker, place one foot on the chair and one foot on top of the locker, and then leap up to the top bunk with his back facing the bed. Plaintiff asked the unit officer if this was dangerous. The officer responded, saying, "It's bad for an older guy like you, but not as bad for the younger guys, although a lot of people fall. I'm just glad I don't have to do it, every place I've ever worked, when the beds are this tall, had ladders or something, just do the best you can."

On July 1, 2010, plaintiff returned to his cell to find that his chair had been taken. Defendant Geit said that he confiscated the chair because plaintiff left it out of his room during the census count. Plaintiff told Geit that he needed the chair to access the top bunk, and now his cell was even more unsafe. Geit responded, "Safe or unsafe, that's not my concern, there are no ladders

on the beds, and this is not the Holiday Inn, you can't always get what you want." Geit told plaintiff that he gave the chair to defendant Dutton.

Plaintiff went to defendant Dutton's office and asked for his chair. Dutton said that pursuant to a unit rule implemented by defendant Robinson, Dutton was confiscating plaintiff's chair for five days because plaintiff left it out during census count. Plaintiff told Dutton that this would make getting into his bunk very dangerous. Dutton replied, "If you fall, you would not be the first to fall, and you probably won't be the last."

At some point, plaintiff informed defendants Roger and Holinka about his safety concerns. They did nothing to fix the problem.

On July 2, 2010, plaintiff got up to use the toilet at 5:30 a.m. Upon returning to his cell, he attempted to climb back up into the top bunk. He slipped from the bed railing and fell backwards, striking the "pit" of his back on the edge of his steel locker and his head on the concrete wall. Plaintiff reported the accident to the unit officer, who told him that this type of thing happened all the time, but that he should go to sick call.

Plaintiff went to sick call and was diagnosed with lower back injuries. He experiences chronic severe back pain and now needs special shoes in order to walk. He can no longer bend over or twist from side to side. He has also experienced bouts of "paralysis" in his lower extremities and legs and has developed a panic disorder from this. Defendant Dutton returned the chair to plaintiff immediately after the accident.

3

OPINION

## I. Imminent Danger

Plaintiff seeks leave to proceed with his complaint *in forma pauperis*.  On at least three prior occasions, however, plaintiff has had lawsuits dismissed for being legally frivolous.  *Cochran v. Dep't of the Treasury*, 08-cv-2295 CCC (D.P.R. June 5, 2009); *Cochran v. Nozick*, 08-cv-306 RL (N.D. Ind. Oct. 27, 2008); *Cochran v. Cochran*, 07-cv-208 JM (N.D. Ind. July 26, 2007).  As a result, plaintiff may proceed *in forma pauperis* only on claims alleging that he is in imminent danger of serious physical injury.  28 U.S.C. § 1915(g).

"The 'imminent danger' exception to § 1915(g)'s 'three strikes' rule is available 'for genuine emergencies,' where 'time is pressing' and 'a threat ... is real and proximate.'" *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003) (quoting *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002)).

Plaintiff's claim is that prison officials disregarded the serious risk posed by the absence of a ladder to get to his top bunk, and that he fell and sustained serious injuries because of defendants' deliberate indifference.  In addition, he states that defendants did not install ladders following his accident, so the danger remained.  These allegations are sufficient to meet the imminent danger threshold even though plaintiff was transferred to a different prison after he filed his complaint, because the imminent danger continued to exist at the time plaintiff filed his complaint.  *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (stating that to meet the imminent danger requirement, "the harm must be imminent or occurring *at the time the complaint is filed*") (emphasis added).  Plaintiff's transfer may moot his claims for prospective relief but it does not moot his damages claims.

## II. Initial Partial Payment

In determining whether a prisoner litigant qualifies for indigent status, this court applies the formula set forth in 28 U.S.C. § 1915(b)(1). According to this formula, a prisoner requesting leave to proceed *in forma pauperis* must prepay 20% of the greater of the average monthly balance or the average monthly deposits made to his prison account in the six-month period immediately preceding the filing of the complaint. In this case, the greater of the two amounts is 20% of the average deposits, which is $0.32. That is the amount that plaintiff will be assessed as an initial partial payment of the filing fee.

If plaintiff does not have the money in his regular account to make the initial partial payment, he will have to arrange with prison authorities to pay some or all of the assessment from his release account. This does not mean that plaintiff is free to ask prison authorities to pay all of his filing fee from his release account. The only amount plaintiff must pay at this time is the $0.32 initial partial payment. Before prison officials take any portion of that amount from plaintiff's release account, they may first take from his regular account whatever amount up to the full amount he owes. Plaintiff should show a copy of this order to prison officials to insure that they are aware they should send his initial partial payment to this court.

Once the court receives plaintiff's initial partial payment, it will screen the complaint under 28 U.S.C. § 1915(e)(2)(B) to determine whether it states a claim upon which relief may be granted.

## III. Motions for Appointment of Counsel and Service

Finally, plaintiff has filed motions for appointment of counsel and for the U.S. Marshal to serve his complaint on defendants. I will deny both of these motions as premature. It is not yet

clear whether plaintiff will choose to pay the initial partial payment in this case, and if he does, whether his allegations will pass screening.  Plaintiff remains free to renew his motion for appointment of counsel at a later time.  As for the motion for service of his complaint, plaintiff can rest assured that the court will arrange for service of the complaint should his allegations pass screening.

ORDER

It is ORDERED that:

(1)    Plaintiff Larry Cochran is assessed $0.32 as an initial partial payment of the $350 fee for filing this case.  He is to submit a check or money order made payable to the clerk of court in the amount of $0.32 on or before August 15, 2011.  If, by August 15, 2011, plaintiff fails to make the initial partial payment or show cause for his failure to do so, then he will be held to have withdrawn this action voluntarily.  In that event, the clerk of court is directed to close this file without prejudice to plaintiff's filing his case at a later date.

(2)    Plaintiff's motions for appointment of counsel, dkt. 5, and for service of the complaint, dkt. 6, are DENIED as premature.

Entered this 26th day of July, 2011.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge