IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY COCHRAN,

                Plaintiff,                OPINION and ORDER

  v.

                                           11-cv-134-wmc

JAMES GEIT, STEVE DUTTON,
STEVE ROBINSON, DERRICK ROGER
and CAROL HOLINKA,

                Defendants.

---

Plaintiff Larry Cochran is proceeding *in forma pauperis* in this *Bivens* lawsuit,[1] claiming that while confined at the Oxford Correctional Institution,[2] prison officials were deliberately indifferent to the danger he faced climbing into the top bunk in his cell without a ladder, which led to a fall and severe injury on July 2, 2010. Because Cochran has three strikes under 28 U.S.C. § 1915(g), he may only proceed *in forma pauperis* on claims containing allegations that he was in imminent danger of serious physical harm at the time he filed this lawsuit in mid-February, 2011.

Both parties have filed multiple motions and other submissions in this case, including defendants' motion to revoke Cochran's *in forma pauperis* status and a motion to dismiss, as well as Cochran's motions to "clarify his claims" and to amend the complaint to include new claims. After considering these submissions, the court will deny all of Cochran's motions, grant defendants' motion to revoke Cochran's *in forma pauperis* status, and deny defendant\'s motion

---

[1] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

[2] Cochran is currently a prisoner at the Terre Haute Federal Correctional Institution.

to dismiss without prejudice and subject to renewal should Cochran prepay the entire $350 filing fee to proceed with the case.

OPINION

**1. Motions for Clarification**

Cochran filed two documents he calls motions to clarify his claim (dkts. #21, 37) arguing that his claim is not for being forced to get into his bunk bed without a ladder, but for the removal of his chair (which he used to climb into his bed). Cochran maintains it is the removal of this chair that created the danger and supports his various claims for "Failure To Protect," "Failure To Prevent Harm Or Injury," "Deliberate Indifference To A Substantial Risk Of Serious Harm to Plaintiff." "The Deliberate Indifference In The Wanton Infliction of Unnecessary Pain Upon Plaintiff," as well as "several more claims and Constitutional Violations."

The specific object (whether a chair or ladder) Cochran claims placed him in danger is not particularly important at the pleading stage, since he was allowed to proceed on an Eighth Amendment deliberate indifference claim based on the danger he faced in climbing up to his bed. The more important question is whether each individual defendant knew that Cochran faced this danger (a dangerous-to-reach bunk bed) and acted with deliberate indifference in failing to provide him with a safe way to get into bed (whether by providing him with a safer method of climbing up to the bunk or with a lower bed). Cochran's attempts to fashion this question into various claims, as quoted above, do nothing to clarify what is a relatively simple,

2

single cause of action for an allegedly dangerous condition of confinement. Accordingly, Cochran's motions for clarification will be denied. As discussed below, however, Cochran is unable to proceed on even this claim until he pays the entire $350 filing fee for this case up front.

**2. Motions to Revoke Imminent Danger Status/Dismiss the Case**

Defendants have filed a motion to revoke Cochran's imminent danger status (dkt. #38), as well as a motion to dismiss the case (dkt. #42). Defendants argue that Cochran lost his imminent danger status because he alleges that (1) his chair (the removal of which he has clarified is the basis for his claim) was returned to him on July 2, 2010; and/or (2) he was assigned to a lower bunk on August 5, 2010. Defendants' arguments for dismissal can be summarized as follows:

(1) Cochran did not properly exhaust his administrative remedies;

(2) Cochran fails to state a plausible Eighth Amendment claim; and

(3) defendants are entitled to qualified immunity.

In addition to his formal responses to these motions, Cochran has filed a flurry of additional submissions: a third motion to clarify his original complaint (dkt. #48), two motions for leave to amend his complaint (dkts. #53, 55), a proposed amended complaint (dkt. #56) and a motion for leave to proceed *in forma pauperis* with the proposed amended complaint under the imminent danger exception (dkt. #57). Cochran's responses regarding his alleged "imminent danger status" raise serious questions about his ability to proceed with this case --

3

or at least to proceed with the case as initially framed in his original complaint. His additional submissions do not attempt to rebut defendants' evidence showing that he was no longer in imminent danger of serious physical harm due to a hard-to-reach bunk. Rather, he explains that the high bunk was not the source of imminent danger at the time of bringing suit in mid-February 2011. Instead, he claims that he was in imminent danger of "permanent paralysis, a permanent panic attack disorder, or death due to a severe spinal and lower back injury sustained as a consequence of the deliberate indifference of the defendant(s)."

In particular, Cochran states that on February 14, 2011, the night before he submitted his complaint for filing, he "experienced nine . . . full hours and fifteen . . . minutes of paralysis and an [extremely] severe panic attack (involving sweating, profusely, heart palpitations, chest pains, labored breathing, choking sensations, and vomiting) and the Plaintiff defecated and urinated on himself because he was unable to move his legs or lower body." He also alleges that (1) this was not the first time he had experienced these symptoms, and (2) he had asked prison officials (including defendants Steve Robinson, a unit manager, and Carol Holinka, the warden, as well as a proposed new defendant, Greg Fearday[3], the health services administrator) to move him to a "Care Level II" Facility before his conditions worsened. He further alleges that these requests were denied. In particular, Fearday allegedly told Cochran that he "didn't care how many requests the Plaintiff wrote, he would not approve a raise in his Care Level until he

---

[3] Cochran seeks to add Fearday as a defendant in the place of Derrick Roger, who could not be served by the United States Marshal and who this court ordered the parties to treat as a John Doe defendant pending Cochran ascertaining that defendant's identity through discovery. Dkt. #41.

believed it was needed." In addition, Cochran's proposed amended complaint would add new claims regarding the lack of medical treatment.

### a. New medical care claims

While there is little question that Cochran's new medical care allegations would usually state a proper Eighth Amendment claim, these new allegations would also completely change the focus of this case. For as much as Cochran has attempted to "clarify" his claims to the court, the allegations contained in his original complaint simply do not put any of the defendants on notice that they were deliberately indifferent to his ongoing medical problems. Rather, his allegations presented straightforward claims for the danger created by the hard-to-reach bunk.[4] Regardless, Cochran cannot pursue his new claims here because he has failed to exhaust his administrative remedies with regard to these medical care claims. Under 42 U.S.C. § 1997e(a), a prison may not bring a *Bivens* challenge such as this one "until such administrative remedies as are available are exhausted." This means that a prisoner must "properly take each step within the administrative process." *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002) (emphasis added). Thus, it is not enough to file a grievance. To comply with § 1997e(a), a prisoner must file all necessary appeals as well. *Burrell v. Powers,* 431 F.3d 282, 284-85 (7th Cir. 2005).

---

[4] Since it now appears undisputed that Cochran was in a lower bunk at the time he filed his initial complaint, he should not have been granted leave to proceed on that claim under the imminent danger exception. Accordingly, Cochran would like to replace his old claims with the new medical care claims that do fit under the imminent danger exception.

The parties have submitted numerous documents detailing relevant administrative grievances filed by Cochran. The only ones that plausibly refer to his medical treatment are grievance nos. 603743 and 605760. Cochran argues that he should have been able to consider these grievances exhausted on February 15, 2011, due to the government's failure to resolve the grievance, stating (without evidentiary support) that February 15 was the deadline for the Central Office to resolve his "BP-11" appeals, but he did not receive word until February 16, that the Central Office had extended its deadline to March 8, 2011. However, the relevant documents show that while the Central Office originally had until February 16, 2011, to issue its decision, it instead notified Cochran on that day that it had extended the deadline into March. Thus, Cochran had no reason to believe on February 15, 2011, that the Central Office had abandoned its grievance process. In any event, Cochran's administrative remedies had not yet been exhausted when he filed his complaint.[5] If Cochran still seeks relief for his medical care claims, he must do so in a new case. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

b. *In forma pauperis* status

This leaves Cochran's claim alleging a dangerous condition in reaching his bunk. As described above, the documents submitted by the parties now make it clear that Cochran was no longer in imminent danger at the time he filed his complaint because he had been moved

---

[5] Cochran states that he placed his original complaint in the mail stream at the prison on February 15, 2011. Under Fed. R. Civ. P. 5(d)(2), a pleading is filed when delivered to the clerk of court, which occurred on February 22, 2011. Regardless which day is considered the day of filing, however, Cochran had not exhausted his administrative remedies by that date; he either filed this lawsuit before the Central Office's February 16 deadline or after being notified that the deadline had been moved into March.

to a lower bunk. This means that the court must revoke Cochran's *in forma pauperis* status, and he may only proceed with the case by paying the full $350 filing fee. *Taylor v. Watkins*, 623 F.3d 483, 485-86 (7th Cir. 2010) (rejecting view that "a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible, even if the defendant had incontrovertible proof that rebutted those allegations"); *Ammons v. Hannula*, No. 08-cv-608-bbc, 2009 WL 799670, at *4 (W.D. Wis. March 24, 2009). **Cochran may, therefore, have until September 30, 2013, to pay the filing fee in full. If Cochran fails to do so timely, the case will be dismissed without prejudice.**

Finally, the court's denial of defendants' motion to dismiss will be without prejudice, subject to defendants refiling a dispositive motion should Cochran timely pay the entire filing fee to proceed with the case. Preferably, this motion will be one for summary judgment given the fact-intensive questions surrounding whether (1) Cochran can sustain an Eighth Amendment claim for his high bunk and (2) qualified immunity applies. Defendants will also have to flesh out their exhaustion argument, rather than erroneously assuming that Cochran waived his ability to submit further evidence regarding exhaustion beyond the documents attached to his complaint (newer documents submitted by plaintiff suggest that his grievance about his chair being confiscated was resolved when he was given back the chair).

ORDER

It is ORDERED that:

(1) Plaintiff Larry Cochran's motions for "clarification of his claims" (dkt. #21, 37, 48) are DENIED.

(2) Plaintiff's motions for leave to amend his complaint and motion for leave to proceed *in forma pauperis* with the amended complaint (dkt. #53, 55, 57) are DENIED.

(3) Defendants' motion to revoke plaintiff's *in forma pauperis* status (dkt. #38) is GRANTED. Plaintiff may have until September 30, 2013 to pay the remainder of the $350 filing fee he owes for this case. **If plaintiff fails to meet this deadline, the case will be dismissed without prejudice**.

(4) Defendants' motion to dismiss the case is DENIED without prejudice to defendants bringing a dispositive motion should plaintiff timely pay the entire filing fee for this case.

Entered this 17th day of September, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge